**Sanjay S. Schmidt (SBN 247475)**
**LAW OFFICE OF SANJAY S. SCHMIDT**
1388 Sutter Street, Suite 810
San Francisco, CA 94109
T: (415) 563-8583
F: (415) 223-9717
e-mail: ss@sanjayschmidtlaw.com

**Panos Lagos (SBN 61821)**
**LAW OFFICES OF PANOS LAGOS**
6569 Glen Oaks Way
Oakland, CA 94611
T: (510) 530-4078 x 101
F: (510) 530-4725
e-mail: panos@panoslagoslaw.com

**Grace Jun (SBN 287973)**
**GRACE JUN, ATTORNEY AT LAW**
501 West Broadway, Ste. 1480
San Diego, CA 92101
T: (310) 709-4012
e-mail: grace@gracejunlaw.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

WILLIAM HENNE, Decedent, by and through his successors in interest; F.H., a minor, by and through her proposed guardian ad litem, Reatana Ven, individually and as co-successor in interest to Decedent; W.A.H., a minor, by and through his proposed guardian ad litem, Alexis Celeste, individually and as co-successor in interest to Decedent; W.R.H., a minor, by and through his proposed guardian ad litem, Alexis Celeste, individually and as co-successor in interest to Decedent,

Plaintiffs,

vs.

COUNTY OF SAN JOAQUIN, a public entity; COUNTY OF SAN JOAQUIN CORRECTIONAL HEALTH CARE employees CHC RN JANICE DANIELSON, CHC RN RITA MANANQUIL, CHC RN MINERVA EBARVIA, CHC RN DARIN STRAUB, CHC RN ALYSSA AGRIPPINO, CHC RN CYNTHIA BISCOCHO, and DOES 1-25, in their individual capacities; and DOES 25–50, individually, jointly and severally,

) Case No.
)
)
) 1. 42 U.S.C. § 1983 – Deliberate Indifference to Serious Medical Needs
) 2. 42 U.S.C. § 1983 – Deprivation of Familial Relations
) 3. California Civil Code § 52.1 (b) – State Civil Rights Violations
) 4. Negligence
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Complaint for Damages and Demand for Jury Trial
*Henne, et al. v. County of San Joaquin et al.*
Case No.                    1

Defendants. )

                                                           )

Plaintiffs, by and through their attorneys, the LAW OFFICE OF SANJAY S. SCHMIDT GRACE JUN, ATTORNEY AT LAW, and LAW OFFICES OF PANOS LAGOS, for their Complaint against Defendants, state as follows:

### JURISDICTION

1. This is a civil-rights, wrongful-death, and survival action arising from Defendants' deliberate indifference to the serious medical and mental health needs of pretrial detainee WILLIAM HENNE, on August 13, 2023, in the San Joaquin County Jail, at French Camp, in the County of San Joaquin, California.

2. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) because this case is brought to obtain compensatory and punitive damages for the deprivation, under color of state law, of the rights of citizens of the United States that are secured by the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988. This action is brought pursuant to the First and Fourteenth Amendments to the United States Constitution, as well as the laws and Constitution of the State of California.

3. Plaintiffs further invoke the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under state law.

### INTRADISTRICT ASSIGNMENT TO SACRAMENTO DIVISION

4. A substantial part of the events and/or omissions complained of herein occurred in the San Joaquin County Jail, at French Camp, in the County of San Joaquin, California, and, pursuant to Eastern District Civil Local Rule 120(d), this action is properly assigned to the Sacramento Division of the United States District Court for the Eastern District of California.

### PARTIES AND PROCEDURE

5. Minor Plaintiff F.H. is and was at all times herein mentioned the daughter of Decedent WILLIAM HENNE and a resident of the State of California. She is being represented in this matter by her mother and proposed guardian ad litem, Reatana Ven, pursuant to Federal Rule of Civil

Complaint for Damages and Demand for Jury Trial
*Henne, et al. v. County of San Joaquin et al.*
Case No.                2

Procedure 17(c). Minor Plaintiff F.H. brings these claims individually for wrongful death and violation of her personal rights, and as co-successor in interest for her father, Decedent WILLIAM HENNE, pursuant to California Code of Civil Procedure § 377.11 and federal civil-rights laws, asserting survival claims for WILLIAM HENNE, under both state and federal law.

6. Minor Plaintiff W.A.H. is and was at all times herein mentioned the son of Decedent WILLIAM HENNE, and a resident of the State of California. He will be represented in this matter by his mother and proposed guardian ad litem, Alexis Celeste, pursuant to Federal Rule of Civil Procedure 17(c). Plaintiff W.A.H. brings these claims individually for wrongful death and violation of his personal rights, and as a co-successor in interest for his father, Decedent WILLIAM HENNE, pursuant to California Code of Civil Procedure § 377.11 and federal civil rights laws, asserting survival claims for WILLIAM HENNE, under both state and federal law.

7. Minor Plaintiff W.R.H. is and was at all times herein mentioned the son of Decedent WILLIAM HENNE, and a resident of the State of California. He will be represented in this matter by his mother and proposed guardian ad litem, Alexis Celeste, pursuant to Federal Rule of Civil Procedure 17(c). Plaintiff W.R.H. brings these claims individually for wrongful death and violation of his personal rights, and as a co-successor in interest for his father, Decedent WILLIAM HENNE, pursuant to California Code of Civil Procedure § 377.11 and federal civil rights laws, asserting survival claims for WILLIAM HENNE, under both state and federal law.

8. Plaintiffs bring these claims pursuant to California Code of Civil Procedure §§ 377.20 *et seq.* and 377.60 *et seq.*, which provide for survival and wrongful-death actions. As set forth more specifically above, Plaintiffs bring their claims both individually and on behalf of WILLIAM HENNE, on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil-rights law, and California law. Plaintiffs also bring these claims as Private Attorneys General, to vindicate not only their rights, but others' civil rights of great importance.

9. Defendant COUNTY OF SAN JOAQUIN ("COUNTY") is a public entity, established by the laws and Constitution of the State of California, which owns, operates, manages, directs, and controls the San Joaquin County Sheriff's Office ("SJCSO"), and is the employer of the individual

Complaint for Damages and Demand for Jury Trial
*Henne, et al. v. County of San Joaquin et al.*
Case No. 3

COUNTY Defendants, as well as certain DOE Defendants. Under the COUNTY's authority, the SJCSO operates the San Joaquin County jail (hereafter referred to as the "Jail" or "jail"). Defendant COUNTY also owns, operates, manages, directs, and controls Correctional Health Services, also referred to by COUNTY as CHC ("CHC"), a division of the COUNTY. CHC is supposed to provide comprehensive medical, dental, chemical dependency, and mental health services, including critical medical care for inmates suffering from opioid withdrawal, to the adult inmate population at the COUNTY's main jail.

10. Defendant CHC RN JANICE DANIELSON ("DANIELSON"), at all material times mentioned herein, was employed by Defendant County's CHC. As set forth below, Defendant DANIELSON failed to provide appropriate treatment and medication for Decedent HENNE's serious medical needs, including asthma and COPD.

11. Defendant CHC RN RITA MANANQUIL ("MANANQUIL"), at all material times mentioned herein, was employed by Defendant County's CHC. As set forth below, Defendant MANANQUIL failed to provide appropriate treatment and medication for Decedent HENNE's serious medical needs, including asthma and COPD.

12. Defendant CHC RN MINERVA EBARVIA ("EBARVIA"), at all material times mentioned herein, was employed by Defendant County's CHC. As set forth below, Defendant EBARVIA failed to provide appropriate treatment and medication for Decedent HENNE's serious medical needs, including asthma and COPD. Defendant EBARVIA further failed to provide proper assessment and monitoring of Decedent HENNE's withdrawal from opioids, and failed to transfer HENNE to a higher level of care when he began exhibiting life-threatening symptoms of opioid withdrawal.

13. Defendant CHC RN DARIN STRAUB ("STRAUB"), at all material times mentioned herein, was employed by Defendant County's CHC. As set forth below, Defendant STRAUB failed to provide appropriate treatment and medication for Decedent HENNE's serious medical needs, including asthma and COPD. Defendant STRAUB further failed to provide proper assessment and monitoring of Decedent HENNE's withdrawal from opioids.

Complaint for Damages and Demand for Jury Trial
*Henne, et al. v. County of San Joaquin et al.*
Case No.                    4

14. Defendant CHC RN ALYSSA AGRIPPINO ("AGRIPPINO"), at all material times mentioned herein, was employed by Defendant County's CHC. As set forth below, Defendant AGRIPPINO failed to provide appropriate treatment and medication for Decedent HENNE's serious medical needs, including asthma and COPD. Defendant AGRIPPINO further failed to provide proper assessment and monitoring of Decedent HENNE's withdrawal from opioids.

15. Defendant CHC RN CYNTHIA BISCOCHO ("BISCOCHO"), at all material times mentioned herein, was employed by Defendant County's CHC. As set forth below, Defendant BISCOCHO failed to provide appropriate detoxification and withdrawal care; provided incompetent detoxification care; failed to summon a physician as required for HENNE; failed to inform any physician, mid-level provider, or registered nurse about HENNE's emergent and life-threatening dehydration; failed to transfer HENNE to the San Joaquin County General Hospital for inpatient treatment and monitoring; and failed to administer an IV to HENNE, all with deliberate indifference to HENNE's serious medical needs.

16. The true names and capacities of Defendants sued herein as DOES 1–50 ("DOE Defendants") are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs will seek leave to amend this Complaint to show their true names and capacities, when the same are ascertained. DOES 1–50 are comprised of SJCSO employees, including Correctional Officers, CHC employees, and any other, to-be-identified individuals employed by either the COUNTY or any other entity – private or public.

17. Plaintiffs are informed and believe, and thereon allege, that each of the Defendants sued herein was negligently, wrongfully, and otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Decedent and Plaintiffs.

18. Further, one or more DOE Defendants was at all material times responsible for the hiring, training, supervision, and discipline of other Defendants, including DOE Defendants.

19. Plaintiffs are informed and believe, and thereon allege, that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter

Complaint for Damages and Demand for Jury Trial
*Henne, et al. v. County of San Joaquin et al.*
Case No.                    5

ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship.

20. Plaintiffs are further informed and believe, and thereon allege, that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter otherwise, specifically alleged.

21. At all material times, each Defendant was jointly engaged in tortious activity, and was an integral participant in the events and violations of rights described herein, resulting in the deprivation of Decedent's and Plaintiffs' constitutional rights and other harm.

22. The acts and omissions of all Defendants, as set forth herein, were at all material times pursuant to the actual customs, policies, practices, and procedures of the COUNTY and/or the SJSO and/or the CHC.

23. At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California.

24. Plaintiffs timely and properly presented and filed a tort claim notice with the COUNTY, pursuant to California Government Code § 910 *et seq.*, and this action is timely filed within all applicable statutes of limitation.

25. This Complaint may be pleaded in the alternative, pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure.

### **GENERAL ALLEGATIONS**

26. Plaintiffs reallege each and every paragraph in this Complaint, as though fully set forth here.

27. On August 10, 2023, at approximately 9:27 p.m., Decedent WILLIAM HENNE was booked into the COUNTY's Jail.

28. The Decedent reported being homeless. The Decedent further reported that he suffered from asthma and chronic obstructive pulmonary disease ("COPD"), which he managed with albuterol. The Decedent reported taking albuterol for his asthma and COPD five (5) times per day.

Complaint for Damages and Demand for Jury Trial
*Henne, et al. v. County of San Joaquin et al.*
Case No.                    6

The Decedent was ordered to be administered albuterol. The Medication Administration Record shows that HENNE never received any medication or treatment for his asthma and COPD.

29. On August 11, 2023, HENNE requested medical attention for withdrawal symptoms he was experiencing. He spoke to Defendant CHC RN JANICE DANIELSON over the telephone; he was not seen in person. He reported, at approximately 6:25 p.m., that he was "Kicking Fentanyl", and was complaining of various withdrawal symptoms, including diarrhea. Diarrhea is a withdrawal symptom that can place a withdrawing inmate at substantial risk of suffering serious harm because it can lead to dehydration and other fatal complications.

30. At this time, HENNE reported to Defendant DANIELSON that he abused fentanyl, and informed her that he had last used fentanyl in the morning on the day he was arrested, on August 10, 2023.

31. HENNE reported using approximately two (2) grams per day for roughly the last two years.

32. Some substances are known to cause predictable illness when use is suddenly stopped. Predictable illness caused by stopping use of a substance is clinically known as withdrawal. Chronic opioid use is a common reason for newly incarcerated individuals to develop a withdrawal syndrome.

33. Opioid Use Disorder ("OUD") is the clinical name for opioid addiction.

34. HENNE suffered from OUD at all material times. There is a dangerous relationship between OUD and asthma and COPD. Upon information and belief, patients like HENNE who also suffer from asthma and OUD require more careful and vigilant monitoring due to the increased risk of asthma mortality.

35. DANIELSON had access to HENNE's medical chart, which noted that he should be administered albuterol every day. Although DANIELSON initiated treatment for opioid withdrawal, she failed to administer any treatment or medication for HENNE's asthma and COPD. Although HENNE required daily administration of albuterol and reported taking it five times per day, DANIELSON made no notation that HENNE had not received any albuterol; DANIELSON did not cause any medication to be administered to HENNE.

Complaint for Damages and Demand for Jury Trial
*Henne, et al. v. County of San Joaquin et al.*
Case No.                    7

36. On August 11, 2023, at approximately 6:30 p.m., the Opiate Withdrawal Protocol began, and medications were administered to HENNE.

37. The Opiate Withdrawal Protocol, however, only called for 32 ounces of Gatorade per day, for three days, which is inadequate to address the severe risks of dehydration, and which is, on information and belief, inadequate to address the hydration needs of a patient suffering from opioid withdrawal.

38. COWS stands for "Clinical Opiate Withdrawal Scale," and consists of a flowsheet for measuring symptoms for opiate withdrawal over a period of time. The COWS (Clinical Opiate Withdrawal Scale) Score was developed to assist clinicians in quantifying the degree of opiate withdrawal during their patient assessments.

39. On August 12, 2023, at approximately 9:24 a.m., HENNE was seen in the clinic at COUNTY's Jail by Defendant CHC RN RITA MANANQUIL ("MANANQUIL") for a follow up "on COWS." MANANQUIL noted that HENNE's COWS score at that time was 10, which was the same as the previous day. RN Mananquil noted that HENNE would "be referred to provider for suboxone use eval[,]" but there appears to be no record of this evaluation ever occurring.

40. Suboxone is a medicine to treat dependence on opioid drugs, including fentanyl.

41. On August 12, 2023, HENNE was continuing to suffer severe withdrawal symptoms and, consequently, he requested medical attention; on information and belief, he was again only assessed via a telephone call; he was not seen in the COUNTY's Jail clinic. The call took place at approximately 2:58 p.m., and HENNE spoke to Defendant MANANQUIL. HENNE complained at that time of nausea and vomiting, as well as body cramping. HENNE reported "withdrawing hard from fentanyl[,]" and reported **multiple episodes of** nausea and **vomiting**.

42. Vomiting is another withdrawal symptom that can place a withdrawing inmate at substantial risk of suffering serious harm because it can foreseeably lead to fatal dehydration, which either directly causes death or precipitates other fatal complications.

43. Vomiting can also be dangerous for those who suffer from untreated asthma and COPD due to the risk of aspiration and asthma-related complications. By August 12, 2023, HENNE had

Complaint for Damages and Demand for Jury Trial
*Henne, et al. v. County of San Joaquin et al.*
Case No.                                    8

gone two days without treatment for his asthma and COPD. Defendant MANANQUIL failed to note that HENNE had not received albuterol for two days and made no attempt to ensure that albuterol was administered to HENNE, despite the fact that HENNE had reported in intake needing to take it five times per day.

44. When HENNE was assessed by MANANQUIL, on August 12, 2023, at approximately 2:58 p.m., he was also complaining of **severe abdominal cramping** and **generalized joint pain**.

45. At that time, HENNE's COWS score was up to 13. MANANQUIL transferred HENNE to "SOMED" – which, on information and belief, is the Jail's infirmary – for closer observation and for an evaluation by an M.D. It does not appear that HENNE ever received the evaluation by an M.D. before he died in-custody. Further, MANANQUIL otherwise took no steps to ensure HENNE received treatment for asthma and COPD.

46. On August 12, 2023, in the infirmary, Defendant CHC RN DARIN STRAUB ("STRAUB") noted that HENNE was restless, reported **multiple episodes of emesis** that morning, and reported body aches. Additionally, HENNE's lips were dry. These were signs of concerning dehydration. Yet, no physician was contacted and no IV was administered to HENNE to hydrate his body.

47. Additionally, the Opioid Withdrawal Protocol required HENNE to be weighed and assessed every 8 hours for determination of a COWS score. His vitals were also required to be taken every 8 hours. HENNE's previous COWS assessment and score occurred with MANANQUIL in the afternoon at approximately 2:58 p.m.

48. Upon information and belief, either STRAUB or Defendant CHC RN MINERVA EBARVIA ("EBARVIA") failed to conduct the COWS assessment that should have occurred at approximately at 11:00 p.m. on August 12, 2023. STRAUB and/or EBARVIA further failed to obtain HENNE's vital signs. And STRAUB and/or EBARVIA took no steps to administer albuterol to HENNE, or otherwise treat HENNE's asthma and COPD. Given HENNE's repeated and prolonged episodes of vomiting, the failure to adequately treat his asthma and COPD placed him at higher risk of suffering asthma-related complications.

Complaint for Damages and Demand for Jury Trial
*Henne, et al. v. County of San Joaquin et al.*
Case No.                    9

49. Critically, Defendants STRAUB and/or EBARVIA failed to measure HENNE's respiration and oxygen saturation and failed to record HENNE's peak flow rate to determine whether he was suffering any consequence from his untreated asthma and COPD.

50. On August 13, 2024, Defendant CHC RN ALYSSA AGRIPPINO ("AGRIPPINO") saw or purportedly assessed HENNE, at 3:17 a.m. Although AGRIPPINO calculated a COWS score for HENNE, she did not take HENNE's vitals. AGRIPPINO, therefore, failed to obtain HENNE's oxygen saturation, failed to measure his respiration, and failed to record his blood pressure and weight. Defendant AGRIPPINO failed to record HENNE's peak flow rate to determine whether he was suffering any consequence from his untreated asthma and COPD. Further, AGRIPPINO took no steps to administer HENNE any albuterol or any other medication or treatment for his asthma and COPD.

51. On August 13, 2023, HENNE's vital signs were taken, at approximately 8:45 or 9:20 a.m., by either Defendant EBARVIA and/or Defendant CHC RN CYNTHIA BISCOCHO. Under the circumstances, and in view of HENNE's acute withdrawals, these vital signs – blood pressure of 94/66 and a heart rate of 110 – were outside of the normal range and, coupled with the fact that HENNE reported that he was **unable to void** (urinate), indicated HENNE was suffering from severe dehydration. Defendants EBARVIA and/or BISCOCHO, in view of these indications, was required to contact a physician to assess HENNE, place HENNE on an IV, and/or cause HENNE to be transferred to the emergency room at San Joaquin General Hospital.

52. When Defendants EBARVIA and/or BISCOCHO saw HENNE, on August 13, 2023, at approximately 8:45 or 9:20 a.m., HENNE had become cardiovascularly unstable – he had a high heart rate and low blood pressure. HENNE's inability to void signaled his bladder was empty – indicating dehydration – and indicating that he was not making urine because his blood volume was very low. The dehydration from which HENNE was suffering put him at a substantial risk of suffering serious harm.

53. Yet, Defendants EBARVIA and/or BISCOCHO failed to call an M.D., failed to consult with an M.D., failed to administer a saline solution to HENNE via an IV, failed to intensely

Complaint for Damages and Demand for Jury Trial
*Henne, et al. v. County of San Joaquin et al.*
Case No.                    10

monitor HENNE, and failed to hospitalize HENNE.

54. On August 13, 2023, when Defendants EBARVIA and/or BISCOCHO saw HENNE in the infirmary in the morning, he also reported cramping. Nonetheless, despite his severe and acute dehydration, and despite his reported cramping, Defendants EBARVIA and/or BISCOCHO did not contact a physician to assess HENNE, did not place HENNE on an IV, and did not cause HENNE to be transferred to the emergency room at San Joaquin General Hospital, at least one of which was required and which a reasonably careful RN would have done in the same or similar circumstances.

55. Despite HENNE displaying vital signs that indicated he was cardiovascularly unstable and indicating his blood volume was low, coupled with an inability to void, Defendants EBARVIA and/or BISCOCHO made an intentional decision to fail to consult with and summon an M.D. to assess HENNE, made an intentional decision to fail to cause HENNE to be hospitalized, and made an intentional decision to fail to administer an IV to HENNE.

56. In doing so, Defendants EBARVIA and/or BISCOCHO both failed to use the level of skill, knowledge, and care in diagnosis and treatment that other reasonably careful RNs would have used in the same or similar circumstances – which, inter alia, required immediately summoning a doctor and escalating HENNE's care, as well as placing HENNE on an IV, or transferring HENNE to the emergency room at San Joaquin General Hospital – but also, by failing to do so, Defendants EBARVIA and/or BISCOCHO put HENNE at substantial risk of suffering serious harm – to wit, fatal dehydration, inter alia.

57. Furthermore, Defendants EBARVIA and/or BISCOCHO did not take reasonable available measures to abate or reduce the risk of serious harm to HENNE – including, but not limited to, ordering that HENNE be transferred or requesting approval for HENNE to be transferred to the emergency room at San Joaquin County General Hospital, summoning an M.D. to immediately assess and treat HENNE, and/or ordering that HENNE be put on an IV – even though a reasonable RN under the circumstances would have understood the high degree of risk involved to HENNE of failing to do any of these—making the consequences of Defendants EBARVIA's and/or

Complaint for Damages and Demand for Jury Trial
*Henne, et al. v. County of San Joaquin et al.*
Case No.                    11

BISCOCHO's conduct obvious.

58. HENNE's untreated dehydration progressively worsened.

59. Human cells are mostly made up of water. Whether by excess loss of water through sweating, vomiting, diarrhea, bleeding, or by reduced fluid intake, a deficit of body water is clinically referred to as dehydration. Severe dehydration requires intravenous fluid administration. Severe dehydration, if not treated, will result in death.

60. Serious deterioration of a patient suffering from withdrawals can happen in a jail like the COUNTY's, and it is a foreseeable outcome. When circumstances occur like those that existed with regard to HENNE, prompt notification of a healthcare practitioner, such as a physician, physician's assistant, or advanced practice registered nurse is required, so that the patient's condition can be assessed, and an appropriate treatment plan can be immediately put in place and executed, to address the patient's acute dehydration. As a result of the deliberate indifference of Defendants EBARVIA and/or BISCOCHO, the proper notification to a physician was not made, the proper assessment never occurred, and no appropriate treatment plan was put into place; HENNE required either that an IV immediately be administered, or that he be hospitalized and given an IV, so his severe dehydration could be treated with intravenous fluids (IV), and so that he would be closely and appropriately monitored.

61. Later that day, on August 13, 2023, Defendant BISCOCHO saw HENNE on the bed in the infirmary, at approximately 3:30 p.m. – 4:00 p.m., in a prone position, which was cause for concern; HENNE purportedly refused to get up and declined to get his meds. HENNE was inferably weak because he was suffering from acute dehydration, inter alia. At that time, HENNE still had not been provided with an IV, despite his acute dehydration, with deliberate indifference to his serious medical needs.

62. Notably, the Opiate Withdrawal Protocol for HENNE states: "with refusal of care in a person with definite withdrawal symptoms, move to a higher level of care." This was not done with regard to HENNE because Defendant BISCOCHO did not summon a physician and did not cause HENNE to be hospitalized.

Complaint for Damages and Demand for Jury Trial
*Henne, et al. v. County of San Joaquin et al.*
Case No.                    12

63. Importantly, it appears that, on August 13, 2023, no welfare check or adequate assessment of HENNE's well-being took place by any COUNTY employee – either from the SJCSO, such as a to-be-identified DOE Defendant Correctional Officer, Sheriff's Deputy, or other employee, or a to-be-identified DOE Defendant CHC employee, such as any medical professional – between either 3:30 p.m. or 4:00 p.m. and 5:02 p.m., when he was found lying on the floor, face-down, and unresponsive.

64. Thus, on August 13, 2023, after a substantial period of time had elapsed with no welfare check being performed on HENNE, despite his acute dehydration and other medical conditions, at approximately 5:02 p.m., Defendant BISCOCHO returned to HENNE's room, and found HENNE on the floor, unresponsive, and face-down.

65. HENNE was "pulled out of his room", CPR / chest compressions were started, and other lifesaving measures were attempted.

66. The life saving measures that were attempted, however, were unsuccessful. American Medical Response ("AMR") Paramedics responded to the COUNTY's jail and continued to attempt to resuscitate HENNE, but these efforts were unsuccessful, and AMR personnel pronounced HENNE dead, at approximately 5:22 p.m.

67. When a withdrawing person like HENNE is dehydrated to the point where their cardiovascular system does not have the blood volume it is accustomed to having, then, since the heart is a pump, when there is not enough blood coming to the heart to get pumped out, an individual like HENNE's cardiac output gets decreased. When a person's cardiac output is decreased, their heart has to perfuse itself. This can cause the heart to stop functioning effectively. And once the heart does not pump any more effectively, then a person has no blood pressure and goes into cardiac arrest. HENNE's fatal dehydration was a combination of not having enough blood volume and having abnormal potassium and sodium levels as a result of his vomiting, diarrhea, and acute dehydration. Additionally, on information and belief, HENNE's mismanaged, acute withdrawal coupled with his untreated asthma potentially caused asthma-related complications that were a factor in HENNE's death.

Complaint for Damages and Demand for Jury Trial
*Henne, et al. v. County of San Joaquin et al.*
Case No.                              13

68. Therefore, by not taking the reasonable available measures – including, but not limited to, ordering that HENNE be transferred or requesting approval for HENNE to be transferred to the emergency room at San Joaquin County General Hospital, summoning an M.D. to immediately assess and treat HENNE, and ordering that HENNE be put on an IV – the Defendants caused HENNE's death.

69. At all material times, and alternatively, the actions and omissions of each Defendant were intentional, wanton, and/or willful, conscience-shocking, reckless, malicious, deliberately indifferent to Decedent's and Plaintiffs' rights, done with actual malice, recklessness, gross negligence, deliberate indifference, negligence, and/or were otherwise objectively unreasonable.

70. As a direct and proximate result of each Defendants' acts and/or omissions, as set forth above, Plaintiffs sustained the following injuries and damages, past and future, including, but not limited to:

a. Wrongful death of WILLIAM HENNE., pursuant to California Code of Civil Procedure § 377.60 *et seq*. (by Plaintiff M.P.);

b. Hospital and medical expenses, pursuant to California Code of Civil Procedure § 377.20 *et seq*. (Survival Claims by Plaintiff M.P.);

c. Coroner's fees, funeral, and burial expenses, pursuant to California Code of Civil Procedure § 377.20 *et seq*. (Survival Claims by Plaintiff M.P.);

d. Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support (wrongful death by Plaintiff M.P and loss of familial association by both Plaintiffs);

e. WILLIAM HENNE's loss of life, including loss of enjoyment of her life, pursuant to federal civil-rights law (Survival Claims by Plaintiff M.P.);

f. WILLIAM HENNE's pre-death, conscious pain and suffering, pursuant to California law (Cal. Code Civ. Proc. § 377.34) and federal civil-rights law (Survival Claims by Plaintiff M.P.);

g. All Plaintiffs' loss of their relationship with the WILLIAM HENNE, including pain and suffering and the attendant emotional distress, pursuant to federal civil rights law (both Plaintiffs, based on individual § 1983 claims for loss of familial association); and,

Complaint for Damages and Demand for Jury Trial
*Henne, et al. v. County of San Joaquin et al.*
Case No.                            14

h.  All damages, penalties, costs, and attorneys' fees recoverable under 42 U.S.C. §§ 1983, 1988; California Civil Code §§ 52 and 52.1 *et seq.*; California Code of Civil Procedure § 1021.5; and as otherwise allowed under California and United States statutes, codes, and common law.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(42 U.S.C. § 1983 14th Am.—Deliberate Indifference to Serious Medical Needs)**
**PLAINTIFFS AGAINST DEFENDANTS DANIELSON, MANANQUIL, EBARVIA, STRAUB, AGRIPPINO, BISCOCHO, and DOES 1-50**

71. Plaintiffs reallege each and every paragraph in this Complaint, as though fully set forth here.

72. By the actions and omissions described above, Defendants deprived WILLIAM HENNE, through Plaintiffs, of the following clearly-established and well-settled constitutional rights that are protected by the Fourteenth Amendment to the United States Constitution:

a.  WILLIAM HENNE's right to needed medical care while in custody;

b.  WILLIAM HENNE's right to be protected while in custody.

73. Defendants DANIELSON and MANANQUIL knew, or should have known (i.e., had reason to know), that HENNE had not received any medication or treatment for his asthma and COPD because they had access to his medical chart, which indicated that HENNE reported taking albuterol five (5) times per day for his asthma, and which ordered daily administration of albuterol to treat his asthma. HENNE, however, never received this medication. Defendants DANIELSON and MANANQUIL knew that untreated asthma could severely exacerbate the risks and symptoms of opioid withdrawal. Yet, both defendants failed to take any measures to ensure HENNE received medication and care for his asthma and COPD.

74. Defendants EBARVIA and STRAUB failed to follow the mandatory Opioid Withdrawal Protocol for WILLIAM HENNE. They knew HENNE had to be assessed every 8 hours, which included weighing him, taking his vital signs, and calculating a COWS score. Defendants EBARVIA and STRAUB failed to ensure that these steps were taken within 8 hours. Periodic and routine assessments every 8 hours are necessary to monitor progressive worsening of symptoms and the decline of a patient's health, including indications of dehydration. By failing to capture

Complaint for Damages and Demand for Jury Trial
*Henne, et al. v. County of San Joaquin et al.*
Case No.                    15

this critical data, Defendants EBARVIA and STRAUB ignored HENNE's worsening condition. They knew he had already complained of prolonged vomiting and diarrhea. They knew, or should have known (i.e., had reason to know), that HENNE had not received any medication or treatment for his asthma and COPD. These Defendants failed to abate the risk to Decedent HENNE.

75. Likewise, Defendant AGRIPPINO failed to weigh Mr. HENNE or record his vital signs at the appropriate juncture in accordance with the Opioid Withdrawal Protocol. AGRIPPINO did not ask Mr. HENNE his subjective symptoms, or otherwise note if Mr. HENNE continued to suffer from vomiting and diarrhea. And AGRIPPINO failed to provide HENNE any treatment for his asthma and COPD.

76. Despite his severe and acute dehydration, reported cramping, and dangerous vital signs, Defendants EBARVIA and/or BISCOCHO did not contact a physician to assess HENNE, did not place HENNE on an IV, and did not cause HENNE to be transferred to the emergency room at San Joaquin General Hospital or otherwise hospitalize HENNE.

77. Defendants subjected WILLIAM HENNE to their wrongful conduct, depriving WILLIAM HENNE of the rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of WILLIAM HENNE and others would be violated by their acts and/or omissions.

78. As a direct and proximate result of Defendants' acts and/or omissions as set forth above, WILLIAM HENNE, through Plaintiffs, sustained injuries and damages, as set forth above, at ¶ 70.

79. The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and California law. Plaintiffs do not seek punitive damages directly against Defendant COUNTY.

80. Plaintiffs are also entitled to reasonable costs and attorneys' fees, under 42 U.S.C. § 1988, and other applicable California codes and laws.

//

//

//

//

Complaint for Damages and Demand for Jury Trial
*Henne, et al. v. County of San Joaquin et al.*
Case No.                    16

## SECOND CAUSE OF ACTION
### (42 U.S.C. § 1983 1st and 14th Am Amendments—Interference with Familial Association)
### <u>PLAINTIFFS AGAINST DEFENDANTS DANIELSON, MANANQUIL, EBARVIA, STRAUB, AGRIPPINO, BISCOCHO, and DOES 1-50</u>

81. Plaintiffs reallege each and every paragraph in this Complaint, as though fully set forth here.

82. By the actions and omissions described above, Defendants deprived WILLIAM HENNE and Plaintiffs of the following clearly established and well-settled constitutional rights that are protected by the First and Fourteenth Amendments to the U.S. Constitution:

    a. The right to be free from wrongful government interference with familial relationships, and Plaintiffs' right to companionship, society, and support.

83. Defendants subjected WILLIAM HENNE and Plaintiffs to their wrongful conduct, depriving WILLIAM HENNE and Plaintiffs of the rights described herein, and they did so knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent or Plaintiffs would be violated by their acts and/or omissions.

84. As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages, as set forth in ¶ 70, above.

85. The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and California law. Plaintiffs do not seek punitive damages directly against Defendant COUNTY.

86. Plaintiffs are also entitled to reasonable costs and attorneys' fees, under 42 U.S.C. § 1988, and other applicable California codes and laws.

## THIRD CAUSE OF ACTION
### (Violation of Civil Code § 52.1 – Bane Act)
### <u>PLAINTIFFS AGAINST DEFENDANTS COUNTY OF SAN JOAQUIN, DANIELSON, MANANQUIL, EBARVIA, STRAUB, AGRIPPINO, BISCOCHO, and DOES 1-50</u>

87. Plaintiffs reallege each and every paragraph in this complaint, as though fully set forth here.

88. Plaintiffs bring the claims in this cause of action as survival claims permissible under California law, including California Code of Civil Procedure. §§ 377.20 *et. seq.*

Complaint for Damages and Demand for Jury Trial
*Henne, et al. v. County of San Joaquin et al.*
Case No.        17

89. By their acts, omissions, customs, and policies, each Defendant acting in concert/conspiracy, as described above, while WILLIAM HENNE was in custody, and by threat, intimidation, and/or coercion, interfered with, and/or attempted to interfere with, and thereby violated Plaintiffs' rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

a. The right to be free from objectively unreasonable treatment and deliberate indifference to WILLIAM HENNE's serious medical needs while incustody as a pretrial detainee, as secured by the Fourteenth Amendment to the United States Constitution and by Article 1, § 7 of the California Constitution, as well as other provisions of the California Constitution;

b. The right to be free from wrongful government interference with familial relationships, and Plaintiffs' right to companionship, society, and support, under both the United States Constitution and the California Constitution;

c. The right to be protected while in custody, as secured by the Fourteenth Amendment;

d. The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1; and

e. The right to protection from bodily restraint, harm, or personal insult, assecured by California Civil Code § 43.

90. Defendants' violations of Decedent's due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.[1] Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violations as described above, Defendants violated the Bane Act by the following conduct constituting threat, intimidation, or

---

[1] *See Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at *23 (E.D. Cal. Sept. 16, 2016) (citing *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013)).

Complaint for Damages and Demand for Jury Trial
*Henne, et al. v. County of San Joaquin et al.*
Case No.                                           18

coercion:

    a. With deliberate indifference to Decedent's serious medical needs, suffering, and risk of harm, including death, depriving Decedent of necessary, life-saving care for her medical needs;

    b. Subjecting Decedent to ongoing violations of her rights to prompt care for her serious medical, causing immense and needless suffering, intimidation, coercion, and threats to her life and well-being;

91. The threat, intimidation, and coercion described herein were not necessary or inherent in Defendants' violation of Decedent's rights, or to any legitimate and lawful jail or law enforcement activity.

92. All of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

93. Each Defendant committed their violations with the specific intent and purpose within the meaning of the Bane Act, by acting with a reckless disregard to the Decedent's and Plaintiffs' rights, and of the interests protected by those rights.

94. Defendant COUNTY is vicariously liable for the violations of rights by its employees and agents.

95. As a direct and proximate result of Defendants' violation of California Civil Code § 52.1, Plaintiffs sustained injuries and damages, and against each and every Defendant are entitled to relief, as set forth above, at ¶ 70, including punitive damages against all individual Defendants, and all damages allowed by California Civil Code §§ 52, 52.1, and California law, including, but not limited to, costs attorneys' fees, three times actual damages, and civil penalties.

**SIXTH CAUSE OF ACTION**
**(Negligence—Wrongful Death and Survival Claim)**
**<u>PLAINTIFFS AGAINST DEFENDANTS COUNTY OF SAN JOAQUIN, DANIELSON,
MANANQUIL, EBARVIA, STRAUB, AGRIPPINO, BISCOCHO, and DOES 1-50</u>**

96. Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

97. At all times, Defendants COUNTY and DOES 1-50 owed Plaintiffs and Decedent the duty

Complaint for Damages and Demand for Jury Trial
*Henne, et al. v. County of San Joaquin et al.*
Case No.            19

to act with due care in the execution and enforcement of any right, law, or legal obligation.

98. At all times, these Defendants owed Plaintiffs and Decedent the duty to act with reasonable care.

99. These general duties of reasonable care and due care owed to Plaintiffs and Decedent by these Defendants include, but are not limited to, the following specific obligations:

    a. To refrain from unreasonably creating danger or increasing Decedent's risk of harm;

    b. To adhere to the standard of care by using the level of skill, knowledge, and care in diagnosis and treatment that other reasonably careful RNs or other, to-be-identified medical practitioners would use in the same or similar circumstances;

    c. To use generally accepted jail management and inmate supervision and monitoring procedures and practices that are reasonable and appropriate to monitor Decedent, a withdrawing pretrial detainee with serious medical needs, adequately and with sufficient frequency, to protect him from harm;

    d. To refrain from abusing their authority granted them by law; and,

    e. To refrain from violating Decedent's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

100. Defendants, through their acts and omissions, breached each and every one of the aforementioned duties owed to Decedent.

101. Defendant COUNTY is vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code section 815.2.

102. As a direct and proximate result of these Defendants' negligence, Plaintiffs and Decedent sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief as set forth above at ¶ 70, including punitive damages against such individual Defendants.

//

Complaint for Damages and Demand for Jury Trial
*Henne, et al. v. County of San Joaquin et al.*
Case No.              20

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief against each and every Defendant herein, jointly and severally:

1.  Compensatory damages in an amount according to proof and which is fair, just, and reasonable;

2.  Punitive damages against the individual Defendants, under 42 U.S.C. § 1983 and California law, in an amount according to proof and which is fair, just, and reasonable (punitive damages are not sought against Defendant COUNTY);

3.  Attorneys' fees and costs of suit under 42 U.S.C. § 1988;

4.  Attorneys' fees and costs of suit under California Civil Code §§ 52 (b)(3) and 52.1(h);

5.  All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988, California Code of Civil Procedure § 1021.5, California Civil Code §§ 52 et seq. and 52.1, and as otherwise may be allowed by California and/or federal law; and,

6.  For such other and further relief, according to proof, as this Court may deem appropriate, just, or proper.

Dated: August 20, 2024
        **LAW OFFICE OF SANJAY S. SCHMIDT, GRACE JUN, ATTORNEY AT LAW, and LAW OFFICES OF PANOS LAGOS**

*/s/ Sanjay S. Schmidt*
By: SANJAY S. SCHMIDT
Attorneys for Plaintiffs

## JURY TRIAL DEMAND

Plaintiffs hereby respectfully demand a jury trial, pursuant to Federal Rule of Civil Procedure 38, for all claims and issues that are triable by a jury.

Dated: August 20, 2024
        **LAW OFFICE OF SANJAY S. SCHMIDT, HELM LAW OFFICE, PC, and GRACE JUN, ATTORNEY AT LAW**

*/s/ Sanjay S. Schmidt*
By: SANJAY S. SCHMIDT
Attorneys for Plaintiffs

Complaint for Damages and Demand for Jury Trial
*Henne, et al. v. County of San Joaquin et al.*
Case No.        21